UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────────x

KALAN SHERRARD,

    Plaintiff,

    -against-                                No. 15-CV-7318 (CM)

CITY OF NEW YORK, ET AL.,

    Defendant.
──────────────────────────────────x

**MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

McMahon, J.:

    In this action, Kalan Sherrard ("Plaintiff") brings suit against the City of New York (the "City"), certain individually named members of the New York City Police Department (Lieutenant Colin Austin, Officer Anthony Denatale, Detective Eugene Lang, Retired Sergeant Michael Liberatore, and Deputy Inspector Howard Redmond), and many "John Doe" police officers, alleging claims for false arrest and violation of freedom of expression and assembly in violation of 42 U.S.C. § 1983. The City has moved for judgment on the pleadings pursuant to Rule 12(c) and the named individual defendants ("Officer Defendants") have moved to dismiss pursuant to Rule 12(b)(6), joining in the City's arguments.

    For the reasons that follow, the motion to dismiss is granted as against Defendants Lang, Austin, Denatale, and Liberatore, because they were not named and sued until long after the statute of limitations had expired. However, because Defendant Redmond was named (by last name, shield number and photograph) prior to the expiration of the statute of limitations,

1

Sherrard's lawsuit cannot be dismissed as to him – even though he was not served until after the limitations period expired.

The City's motion for judgment on the pleadings is granted.

## BACKGROUND

### I. Factual History

The underlying facts alleged in Plaintiff's complaint are relatively simple and taken to be true for purposes of this motion.

Plaintiff is a street performance artist who dresses provocatively for his work. Am. Compl. ¶ 19.

On September 17, 2012, at about 6:00 a.m., Plaintiff, wearing bright pink panties and absolutely nothing else, was arrested while he was riding his bicycle along with a few other people. The group was on Lafayette Street near White Street and was proceeding downtown. Am. Compl. ¶¶ 19–20.

Plaintiff alleges that his arrest was part of a coordinated plan by the New York City Police Department ("NYPD") to thwart a mass protest that they supposedly knew was going to occur – the protest being the disruption of Wall Street to commemorate the one year anniversary of the Occupy Wall Street movement. *Id.* ¶¶ 17–18. Plaintiff alleges that the NYPD's plan was to prevent people from congregating around the expected site of the protest by intercepting and arresting individuals they determined were heading in that direction. *Id.* ¶ 18. As proof, he cites the fact that he was arrested one mile away from the site of the protest.

However, Plaintiff does not allege that any of the people who were riding southward on their bikes were also arrested – only he.

Plaintiff alleged in his original complaint that "Lieutenant Doe, who appeared to be in charge of the operation, arrived in an unmarked police car and eventually ordered one of the

2

Does to arrest Plaintiff." Original Complaint ¶ 16. In the amended complaint, for reasons that will shortly become apparent, that allegation was leveled at Deputy Inspector Howard Redmond, who was allegedly coordinating the "plan" to thwart the protest. Am. Compl. ¶¶ 19–22.

Plaintiff asserts that many police officers, including specifically the four other named Officer Defendants and a number of officers who are still identified as John Doe defendants, were in a position to observe Plaintiff's unlawful arrest but did nothing to stop it. *Id.* ¶¶ 23–25.

Plaintiff alleges, as further evidence of the unlawfulness of his arrest, that he was never told why he was being arrested, was subsequently held at Central Booking for 19 hours, and was ultimately released without being charged with a crime. *Id.* ¶¶ 26–27.

## II. Procedural History

Plaintiff filed his original complaint on September 16, 2015. He named as defendants the City, a Lieutenant Doe (identified as the arresting officer), a "Doe Redmond Shield 95," and John Does 1–10. Original Compl. ¶¶ 6–12. The complaint indicated that Doe Redmond Shield 95 might be the same person as some other unnamed defendant. Attached to the complaint were five photographs; in the text of the complaint they were identified as the person who ordered plaintiff's arrest ("Lieutenant Doe") and John Does 1–4. Original Compl., Exs. A–E.

On October 15, 2015, Plaintiff asked for permission to serve interrogatories and document requests on the City in order to determine the identity of the John Doe defendants. ECF No. 14. By order dated October 22, 2015, the City was directed to identify any and all people involved with Plaintiff's arrest, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997). ECF Nos. 16, 18.

On November 2, 2015, the City identified five individuals who were involved with his arrest.

The first was Deputy Inspector Howard Redmond, who wears NYPD Shield No. 95. Redmond was identified by the City as the individual whose photograph was attached to the original complaint as Exhibit A. This meant that "Doe Redmond Shield 95" was the same person as "Lieutenant Doe," who had been identified in the original complaint as the individual who appeared to be running the operation and who ordered plaintiff's arrest.

The second was Detective Eugene Lang, who had been referred to in the original complaint as John Doe #4, and whose picture was attached as Exhibit E.

The other three individuals who were identified in the City's first *Valentin* response were Officer Anthony Denatale, Sergeant Colin Austin, and Retired Sergeant Michael Liberatore. ECF No. 19. Those three did not correspond to any of the photographs attached to Plaintiff's original complaint. *See* Original Compl. ¶¶ 6–12.

On November 17, 2015, the City identified two additional individuals who were involved with Plaintiff's arrest: Deputy Inspector William Taylor and Officer Brian McCarthy. Taylor was the captain on scene at the time of the arrest. ECF No. 21. Their photographs were also not attached to the original complaint.

On December 14, 2015 – which was within 120 days after the filing of the initial complaint – Plaintiff filed an amended complaint, naming as defendants Lieutenant Colin Austin, Officer Anthony Denatale, Detective Eugene Lang, and Retired Sergeant Michael Liberatore. He also named Deputy Inspector Howard Redmond in place of the previously named "Doe Redmond Shield 95." The caption continued to list nine John Doe defendants, the first three of whom were depicted in Photographs B, C, and D attached. Am. Compl. ¶¶ 6–16, Exs. B–D.

Liberatore and Redmond were served on December 16, 2015, ECF Nos. 49–50, while Denatale and Austin were served on December 28 and 30, 2015, respectively. ECF Nos. 52–53.

4

These four individuals were served within 120 days of the filing of the original complaint. Lang, it appears, has never been served.

The City filed an answer to the amended complaint, ECF No. 33, and on December 22, 2015, it moved for judgment on the pleadings, pursuant to Rule 12(c). ECF No. 46. On February 24, 2016, after that motion was fully briefed, Defendants Austin, Denatale, Liberatore, and Redmond, who had not yet answered the amended complaint, moved to dismiss pursuant to Rule 12(b)(6), on the ground that they had not been sued until after the statute of limitations had expired.

## DISCUSSION

### I. Legal Standard

The standard for granting a motion for judgment on the pleadings under Rule 12(c) "is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverley Hills*, 259 F.3d 123, 126 (2d Cir. 2001); *see also Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998). "In both postures, the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *Id.* A Rule 12(c) motion should not be granted unless the Court is "satisfied that the complaint cannot state any set of facts that would entitle [the plaintiff] to relief." *Id.*

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003); *see also Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.

Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations, citations, and alterations omitted). Thus, unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Id.* at 570; *Iqbal*, 556 U.S. at 679–80.

Finally, in deciding a motion to dismiss, the Court may consider the full text of documents that are quoted in or attached to the complaint, or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit. *Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir. 2000); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir. 1996).

## II. The Complaint is Dismissed as Against Lang for Failure to Serve

The record contains no evidence that Defendant Eugene Lang was ever served. The time for effecting service on him has long since passed, and no application for an extension of time was ever received by the Court. Therefore, the complaint is dismissed *sua sponte* as to Lang.

The court notes that, for the reasons discussed in Section III below, the complaint would have to be dismissed as against Lang in any event.

### III. The Complaint is Dismissed as Against Defendants Austin, Denatale and Liberatore, But Not as Against Defendant Redmond

All four of the four moving Officer Defendants argue that Plaintiff's claims against them are barred by the applicable statute of limitations. Three of them are correct; one of them is wrong.

#### A. Austin, Denatale and Liberatore

"Section 1983 actions in New York are subject to a three-year statute of limitations." *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015). The clock begins to run from the date a "plaintiff knows or has reason to know of the injury giving rise to the claim." *Id.*; *see Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013). That date was the date of Plaintiff's arrest, September 17, 2012. The statute of limitations thus expired on his § 1983 claims on September 17, 2015.

For limitations purposes, the Second Circuit has held, in *Barrow v. Wethersfield Police Dep't*, 66 F. 3d 466 (2d Cir. 1995), that a plaintiff who sued John Doe defendants because he did not know their identities must discover their identities and sue them in their real names before the statute of limitations runs, or his claim will be time-barred. In so holding, the Circuit specifically rejected the argument that, under Rule 15(c)(1)(C), an amended complaint filed after the statute had run that named a previously unnamed defendant would "relate back" to the timely-filed complaint against John Doe defendants whose identities were unknown to plaintiff at the time of its filing. *See Barrow*, 66 F. 3d at 470; Rule 15(c)(1)(C).

Plaintiff filed his original complaint on September 16, 2015 – so it was timely, but only just. In that complaint he named one individual whose first name he did not know – "Doe Redmond Shield 95" – and a lot of "John Doe" defendants, whose identities he did not know, although he had photographs of four of them. The statute of limitations ran the next day.

7

Plaintiff waited so long to bring his action that he literally had no time to obtain and serve a *Valentin* order (which is routinely issued in this district) in order to identify the people he wanted to sue.

Plaintiff argues that his amended complaint – in which he finally named Liberatore, Denatale and Austin – related back to the original complaint, in which those individuals were named only as "John Does."[1] This is the very argument that the Second Circuit rejected in *Barrow*. Plaintiff responds that *Barrow* is no longer good law, in light of the United States Supreme Court's decision in *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 130 S. Ct. 2485, 177 L. Ed. 2d 48 (2010). But this court has already rejected that argument in *Vasconellos v. City of New York*, No. 12 Civ. 8445, 2014 WL 4961441, 2014 U.S. Dist. LEXIS 143429 (S.D.N.Y. Oct. 2, 2014).

Furthermore, the Second Circuit itself has indicated in several post-*Krupski* decisions that it believes *Barrow* to be good law. *See, e.g., Hogan*, 738 F.3d at 517–18 (2d Cir. 2013); *Sewell v. Bernardin*, 795 F. 3d 337, 342 (2d Cir. 2015); *see also Scott v. Village of Spring Valley*, 577 F. App'x 81, 82–83 (2d Cir. 2014). In light of these Court of Appeals decisions, at least one of my colleagues who had originally declined to follow *Barrow* in light of *Krupski* has changed her mind. *See Harris v. City of New York*, No. 13 Civ. 7788, 2016 WL 427908, 2016 U.S. Dist. LEXIS 12872, at *12 (S.D.N.Y. Feb. 3, 2016).

Plaintiff also argues that *Barrow* is irrelevant, because the relation back issue should not be analyzed under Rule 15(c)(1)(C) and should instead only be analyzed under Rule 15(c)(1)(A) (as discussed below). He is wrong.

Rule 15(c)(1)(C) provides that an amended complaint relates back to the original when:

---

[1] The Court notes that photographs of these three officers were not appended to the original complaint.

> [T]he amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Plaintiff argues that this rule does not apply to his pleading because his "original complaint made clear and unmistakable reference to the individuals he was intending to sue, and he attached photographs of them." Mem. in Opp. to Defs.' Mot. for J. on the Pleadings ("Mem in Opp.") 5. Plaintiff argues that he did not "change" the "naming of the part[ies]," because, "Their identity was not unknown only their names," *id.* at 5, and because he obviously knew that the defendants listed as John Doe were not actually named "John Doe." If he made no "change" in the names of the parties, then, according to Plaintiff, Rule 15(c)(1)(C) does not apply.

But *Barrow* forecloses the argument. The Second Circuit specifically held that the substitution of a real name for a John Doe "changes . . . the naming of the party against whom a claim is asserted." *Barrow* squarely holds that "replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." 66 F.3d at 468 (quoting *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993)). Thus Rule 15(c)(1)(C) governs in this instance.

Finally, Plaintiff argues that, even if the complaint does not relate back under Rule 15(c)(1)(C), it related back under Rule 15(c)(1)(A), which allows an amended complaint to relate back to the original when " the law that provides the applicable statute of limitations allows relation back."

But Rule 15(c)(1)(A) is of no help to Plaintiff.

Assuming *arguendo* that the rule applied here, New York law provides the applicable statute of limitations, so if this rule could be invoked here, the amended complaint would relate

9

back to the original only if New York law would allow it. *Vasconcellos*, 2014 U.S. Dist. LEXIS 143429, at *15; *see Hogan*, 738 F.3d at 518. Plaintiff argues that CPLR § 1024, if read together with CPLR § 306-b, allows relation back in the circumstances here presented. He is wrong.

CPLR § 1024 provides:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

A plaintiff who takes advantage of CPLR § 1024 must serve the defendant "within one hundred twenty days after the commencement of the action . . . ." CPLR § 306-b.

However, courts have imposed a requirement under CPLR § 1024 that plaintiffs "exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name." *Hogan*, 738 F.3d at 519 (quoting *Bumpus v. N.Y.C. Transit Auth.*, 66 A.D.3d 26, 883 N.Y.S.2d 99, 104 (2d Dep't 2009); *see Doe v. New York*, 97 F. Supp. 3d 5, 18–19 (E.D.N.Y. 2015); *Ceara v. Deacon*, 68 F. Supp. 3d 402, 408 (S.D.N.Y. 2014); *see also Fisher v. County of Nassau*, No. 10-CV-0677, 2011 WL 4899920, 2011 U.S. Dist. LEXIS 118269, at *12–13 (E.D.N.Y. Oct. 13, 2011). Plaintiff would be hard pressed to argue that he exercised due diligence in this regard. He does not allege that he tried to engage in pre-filing discovery, as permitted under New York's Civil Practice Law and Rules in anticipation of an action to be filed in the New York State Supreme Court. *See* CPLR § 3102(c). He forebore to file his complaint until one day before the limitations period ran, but he offers no evidence that he was incapacitated or otherwise unable to file his lawsuit earlier, when a timely *Valentin* order could have yielded the information he needed well before the cut-off date. *See Hixon v. City of New York*, No. 14 Civ. 02504, 2016 WL 427908, 2015 U.S. Dist. LEXIS 94887, at *8–9 (S.D.N.Y.

July 13, 2015). The only evidence of any attempt whatsoever to ascertain the identities of the Officer Defendants was one phone call by Plaintiff's counsel in September 2015 – the very month in which he finally filed suit, and in which the statute was due to run – to One Police Plaza. Furthermore, there is not a scintilla of evidence that Plaintiff used that occasion to ascertain anything about the John Doe officers who turned out to be Liberatore, Denatale and Austin; rather, he asked for the names and badge numbers of anyone named "Redmond" (whose situation will be discussed below). Fedirici Decl. ¶ 3.

Plaintiff's dilatoriness is more inexplicable because he, unlike many persons who find themselves in his predicament actually had some hard evidence to go on as to two of the defendants. He had a photograph of Redmond and Redmond's badge number; he had a photograph of Lang; he had photographs of three other John Doe defendants, though it does not appear he ever learned their names. Yet he made almost no effort – and certainly not significant effort – to ascertain the identities of the parties he hoped to sue within the limitations period.

Plaintiff insists that the due diligence requirement announced in *Hogan* (a decision binding on this court) applies only "when a plaintiff cannot identify and serve the proper party defendant within the 120-day period provided by CPLR § 306-b." Mem. in Opp. 11. To buttress his argument, Plaintiff cites language from *Bumpus v. N.Y.C. Transit Auth.*, 66 A.D.3d 26, 883 N.Y.S.2d 99 (2d Dep't 2009), which indicates that the 120-day window to serve a defendant can be extended by a court upon either a showing of "good cause" or "in the interest of justice." Mem. in Opp. 11–12; *Bumpus*, 883 N.Y.S.2d at 105.

Plaintiff is wrong about *Bumpus*. A New York state court (not a federal court) may indeed extend the 120-day window provided by CPLR § 306-b on a showing of either "good cause" or "in the interest of justice" – but *Bumpus* concerned a plaintiff's efforts to serve a

defendant whose name he knew, not his efforts "to identify the defendant by name." *See Bumpus*, 883 N.Y.S.2d at 105. That Plaintiff learned the identities of, and then served, the Officer Defendants within 120 days after filing his original complaint did not obviate the requirement that he have undertaken "significant efforts" to identify them before the running of the statute of limitations.

Thus, Plaintiff's failure to exercise due diligence to identify a defendant by name would be fatal to relation back under Rule 15(c)(1)(A) and CPLR § 1024. *See Gonzalez v. City of New York*, No. 14 Civ. 7721 (LGS), 2015 WL 6873451, 2015 U.S. Dist. LEXIS 151810, at *8–9 (S.D.N.Y. Nov. 9, 2015); *see also Doe*, 97 F. Supp. 3d at 20.

But the entire discussion is really of no moment, because there is no way that Plaintiff can get this case out from under Rule 15(c)(1)(C) and *Barrow*.

Therefore, the complaint is dismissed with prejudice as against Defendants Austin, Denatale and Liberatore.

### B. Redmond

Inspector Redmond is another matter entirely. I conclude that he was in fact adequately and properly named as a defendant in the original (timely filed) complaint, and it is admitted that he was served within 120 days thereafter. So the amended complaint and the whole issue of relation back is irrelevant as to Redmond. His motion to dismiss on limitations grounds is denied.

The original complaint named a defendant "Doe Redmond" whose shield number was 95. That Plaintiff did not know Redmond's first name is of no moment; the combination of the last name and the shield number suffices to identify him sufficiently for purposes of the statute of

limitations. That his photograph was attached to the original complaint only cements the Court in its conclusion.

The shield number and the facial photograph seem to this Court fully analogous to DNA identification, in that both an individual officer's shield number at any given time and his facial photograph are identifiers unique to a particular individual. The court is aware that indictments have been filed in the New York State Supreme Court against particular DNA profiles in order to defeat the running of the statute of limitations when a defendant's name is not known.[2] Because DNA is unique to a particular individual, this procedure has been held sufficient to identify a criminal defendant so as to defeat an argument that the statute had run before his name appeared in the caption. *See People v. Martinez*, 52 A.D.3d 68, 855 N.Y.S.2d 522 (1st Dep't 2008). A shield number (which, as far as the court is aware, is worn by only one officer at any given moment in time) and a photograph of someone's face uniquely identifies a particular individual officer in much the same way that a DNA profile would – and perhaps more specifically than a name would (there are probably several officers in the NYPD named Michael Kelly, for example). Had Redmond picked up a copy of the original pleading, he would immediately have recognized that he and no one else was being sued. That his first name and his true rank (he is a Deputy Inspector, not a Lieutenant) were not known until after the statute had run does not negate the powerful identification provided by the combination "Redmond-Shield 95-photograph."

---

[2] *See e.g.*, Julian E. Barnes, *East Side Rapist, Known Solely by DNA, is Indicted*, N.Y. TIMES (Mar. 16, 2000), http://www.nytimes.com/2000/03/16/nyregion/east-side-rapist-known-solely-by-dna-is-indicted.html; *see generally* Meredith A. Bieber, Comment, *Meeting the Statute or Beating it: Using "John Doe" Indictments Based on DNA to Meet the Statute of Limitations*, 150 U. PA. L. REV. 1079, 1079 & n.1 (2002).

Therefore, while he added a first name to the surname, shield number and photograph, Plaintiff did not make any "change . . . [in] the naming of" Redmond when he filed his amended complaint.

Nothing in *Barrow* is to the contrary. *Barrow* held only that replacing the name "John Doe" with a real name effected a change in party. It did not hold that adding a previously unknown first name to a surname, shield number and photograph effected a change of party. I thus conclude that there was no need for him to amend the complaint as to Redmond, and the addition of his first name does not implicate the relation back rules in the slightest.

For this reason, Redmond's motion to dismiss this action as untimely filed against him is denied.

### IV. The City's Motion for Judgment on the Pleadings as to Plaintiff's *Monell* Claim is Granted

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the Supreme Court held that a municipality may be held liable under § 1983, but not on a theory of *respondeat superior*. 436 U.S. at 690–91. "[M]unicipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008). This can be shown "where 'policies or customs that [were] sanctioned by the municipality led to the alleged constitutional violation.'" *Missel v. Ctny. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (quoting *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)). In other words, "there must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). Therefore, examining the adequacy of a *Monell* claim is a two-step inquiry that requires a court to determine first, whether a municipal

policy or custom is alleged, and if so, whether the allegations demonstrate that such policy or custom was the reason for the alleged injury. *See Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 439 (S.D.N.Y. 2013).

> To establish a municipal policy or custom, a Plaintiff must allege one of the following:
>
> (1) a formal policy officially endorsed by the municipality; (2) actions taken by the government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policy makers to train or supervise subordinates.

*Vasconcellos*, 2014 U.S. Dist. LEXIS 143429, at *24–25 (quoting *Harper v. City of New York*, No. 11-Civ-4333, 2013 U.S. Dist. LEXIS 14951, 2013 WL 432599, at *4 (S.D.N.Y. Jan. 31, 2013); *see Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996); *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010). However, "Plaintiff cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but 'must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.'" *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, 2015 U.S. Dist. LEXIS 38703, at *38 (S.D.N.Y. Mar. 26, 2015) (quoting *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012)).

Because *Monell* only *extends* liability to a municipality organization, *see Segal*, 459 F.3d at 219, "a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Claudio v. Sawyer*, 675 F. Supp. 2d 403, 408–09 (S.D.N.Y. 2009), *aff'd*, 409 F. App'x 464 (2d Cir. 2011).

Accepting as true that Plaintiff adequately pleads constitutional violations, he nonetheless fails to plausibly allege a *Monell* claim.

15

Plaintiff does not allege a failure to train or supervise, a consistent or widespread practice, or any actions taken by government actors. His *Monell* claim appears solely premised on his belief that the City endorsed a formal policy of intercepting people who it believed were headed to the planned protest site and arresting them. Plaintiff offers very few facts to support this claim. His assertion that a policy existed is based on the fact that he was arrested, allegedly unlawfully, early in the morning, one mile from the protest site, by order of Deputy Inspector Redmond, while all the rest of the Officer Defendants "participated, enabled, or acquiesced." Am. Compl. ¶¶ 21–25.

In *Higginbotham v. City of New York* 105 F. Supp. 3d 369 (S.D.N.Y. 2015), Higginbotham, a journalist covering the Occupy Wall Street protests, brought suit against individual police officers and the City of New York for *inter alia*, false arrest and violation of his First Amendment rights. 105 F. Supp. 3d 371–72. Higginbotham alleged that 44 journalists were arrested over a period of 15 days, that former New York City Mayor Bloomberg admitted to "limitations [being] placed on the media to prevent coverage of the [protests]," and that former NYPD Commissioner Kelly instructed NYPD officers "not to unreasonably interfere with journalists' access to news events," suggesting that he was aware that they had been previously doing so. *Id.* at 382–83. Nonetheless, Judge Castel dismissed Higginbotham's *Monell* claim, ruling that these allegations of a policy were not specific enough. For example, Judge Castel noted that Higginbotham did not allege that many of the 44 journalists were arrested *unlawfully* or that the percentage of journalists being arrested was any higher than the percentage of general protestors being arrested. *Id.* Additionally, he explained that Mayor Bloomberg's statement did not specify what the limitations on journalists were, and that in any event, an admission of prevention of access does not necessarily mean a "policy of unconstitutional arrests." *Id.* at 383.

16

Plaintiff here argues that *Higginbotham* is distinguishable, but he is wrong. If anything, the instant case is much weaker that Higginbotham. In this case, Plaintiff does not point to the making of any statements or dispersion of any memoranda by the City, the NYPD, or any high ranking City official from which any policy – let alone an unconstitutional policy of trying to prevent protesters from reaching the site of the Occupy Wall Street rally – could possibly be inferred. *See Biswas v. City of N.Y.*, 973 F. Supp. 2d 504, 538 (S.D.N.Y. 2013).

Assuming *arguendo* that Plaintiff's arrest was unlawful, "a policy cannot ordinarily be inferred from . . . a single arrest without probable cause. . . ." *Fanelli v. Town of Harrison*, 46 F. Supp. 2d 254, 259 (S.D.N.Y. 1999); *see also Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). Plaintiff also does not allege that anyone other than he was arrested out of the group with which he was traveling toward the protest site; he does not paint a picture of a sweep in which everyone who was moving toward the protest site was placed in paddy wagons. There is no allegation in the amended complaint that everyone who was moving south on Lafayette Street that morning was arrested – or that anyone other than Plaintiff himself was arrested. While I have little doubt that many arrests were made on September 17, 2012, the complaint does not allege that others were arrested in order to keep them from reaching the protest site. Plaintiff argues in his brief that Deputy Inspector Redmond did not have a legitimate reason to be outside in the place where Plaintiff was bicycling at 6:00 a.m. on the Occupy Wall Street anniversary, but there is no allegation in the amended complaint that it would be atypical for a Deputy Inspector to be out and about on a morning when a protest was anticipated. Instead, Plaintiff suggests in his opposition papers that I should infer that Redmond was behaving atypically. Unfortunately for Plaintiff I have no reason to do so – or to assume that, if he were

17

behaving atypically, it was pursuant to any municipal policy directed at keeping protesters from the Occupy Wall Street rally.

Plaintiff further alleges in his opposition papers that there were "an entire parade of police vehicles lined-up down Lafayette Street as far as the eye could see." Mem. in Opp. 14. This is consistent with the NYPD's oversight of a publicized protest, and if it were in his pleading, it would not give rise to the inference that the vehicles were sitting there in order to arrest individuals who were lawfully proceeding toward the protest site. But it is not in his pleading; it is only in his brief. As the City aptly points out in its reply, facts first alleged in an opposition brief to a motion to dismiss (and therefore, to a motion for judgment on the pleadings) cannot be considered in determining whether the amended complaint is adequate to survive the motion. *See Hunter v. N.Y.C. Health & Hosps. Corp.*, No. 13-CV-2659, 2015 WL 1527646, 2015 U.S. Dist. LEXIS 44801, at *29–30 (E.D.N.Y. Mar. 31, 2015); *CAC Group, Inc. v. Maxim Group, LLC*, No. 12 Civ. 5901, 2012 U.S. Dist. LEXIS 148062, 2012 WL 4857518, at *1 n.1 (S.D.N.Y. Oct. 10, 2012).

Plaintiff's allegation that his arrest was effected pursuant to a policy of trying to keep protesters away from the rally essentially amounts to conclusory speculation, which is insufficient to state a *Monell* claim. *See Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, 2015 U.S. Dist. LEXIS 38703, at *41–42 (S.D.N.Y. Mar. 26, 2015) (collecting cases); *Matthews v. City of N.Y.*, 889 F. Supp. 2d 418, 444–45 (E.D.N.Y. 2012).

Plaintiff also fails to satisfy the second prong of *Monell,* as he has not pleaded sufficient facts from which it could be inferred that the alleged NYPD policy was the reason for his arrest. The only allegation in the amended complaint that suggests any causal link between the two is that Plaintiff was arrested one mile from the planned protest site. There is no allegation that the

Officer Defendants knew the Plaintiff was on his way to the protest or that every person on Lafayette Street was apprehended, regardless of his behavior.

Because the statute of limitations has run, it would be futile to permit Plaintiff to try to further amend his pleading. *See Twersky v. Yeshiva U.*, 579 F. App'x 7, 11 (2d Cir. 2014); *Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000); *Strada v. City of N.Y.*, No. 11-CV-5735 (MKB), 2014 WL 3490306, 2014 U.S. Dist. LEXIS 94687, at *34 (E.D.N.Y. July 11, 2014). Therefore, the claim must be dismissed.

In short, Plaintiff has not pleaded sufficient facts to sustain a *Monell* claim against the City. Therefore, the City's motion for judgment on the pleadings is granted.

## CONCLUSION

For the foregoing reasons, the complaint against Defendant Lang is dismissed due to failure to serve. The motion by Defendants Austin, Denatale and Liberatore to dismiss the claim against them as time-barred is GRANTED, and the corresponding motion by Defendant Redmond is DENIED. The City's motion for judgment on the pleadings is GRANTED. The Clerk of the Court is directed to remove Docket Nos. 46 and 58 from the Court's list of pending motions.

SO ORDERED.

Dated: April 15, 2016

_____
U.S.D.J.

BY ECF TO ALL COUNSEL